James L. SHAHAN, Defendant-Appellant,

v.

James Frederick BRINEGAR, and Dulcie Lou Brinegar, Plaintiffs-Appellees.

No. 1–378A56.

Court of Appeals of Indiana,
First District.

June 14, 1979.

Paul J. Watts, Spencer, for defendant-appellant.

Thomas A. Berry, Bloomington, for plaintiffs-appellees.

LYBROOK, Judge.

Defendant-appellant James L. Shahan (Shahan) brings this appeal from an action initiated by plaintiffs-appellees, James Frederick and Dulcie Lou Brinegar (Brinegar) for breach of the lease and contract entered into by the parties on December 7, 1973.

The lease involved the five-year rental of a building at 710 North College Avenue, Bloomington, known as the Still, for payment of $500 per month. The contract concerned the sale by Brinegar of certain tavern equipment located in the building to Shahan. Also executed was an agreement which called for the transfer of a three-way liquor and alcoholic beverage license from Brinegar to Shahan and served as an employment contract between the parties, naming Shahan as business manager of the Still until the license was transferred. There is some dispute as to when the lease was to commence, with Brinegar claiming that it was to start "December 10, 1973 and on the transfer of the license." Shahan took physical possession of the Still and began to operate as "manager" of the business December 16 or 17 of 1973. Shahan did not pay rent for the remainder of December, 1973, and for the month of January, 1974. Shahan made his first rent payment in April, 1974. A summary of rent payments plus interest prepared by Brinegar showed Shahan in arrears in the amount of $2,867.02, at the time of trial.

The lease also contained a three-month grace period on any overdue rent. Brinegar claimed that Shahan was behind in his rent payments for the first three months of the lease.

Shahan began paying $500 per month in April, 1974, and paid that amount each month throughout the remainder of 1974. In July, 1974, he paid an additional $250 as partial payment of the amount he was behind. In 1975, Shahan paid $500 each month through August, including an additional $250 payment in March. A fire occurred at the Still in August, 1975, which was followed by an eight to ten week period

during which the premises were repaired. Although he did not pay rent for October, 1975, Shahan resumed rental payments in November, 1975, and continued paying through October, 1977.

On October 4, 1976, Brinegar served written notice on Shahan's attorney demanding that Shahan's rental payments be made current. Shahan failed to do so. Brinegar subsequently filed suit.

Following an inventory check of the contents of the building, Brinegar complained that certain equipment was missing from the premises, contrary to the security provisions in the contract which provided that all equipment was to remain on the premises until the contract was paid in full. Brinegar valued the missing equipment at $2,515.18.

Brinegar repaired the premises following the fire in August, 1975, and Shahan replaced some of the missing equipment in some instances with equipment of greater value. Shahan also added such items as a pool table.

Neither party made a demand for arbitration under the lease prior to trial.

On December 9, 1976, Brinegar brought suit against Shahan alleging: (1) overdue rent under the lease and (2) removal of certain items from the premises, both in breach of contract. Brinegar sought money demands for the count brought under the lease, and specific performance and reconveyance of the liquor license under the contract. Shahan counterclaimed against Brinegar, asserting that by failing to submit the dispute to arbitration as required by the lease, and by accusing Shahan of removing items from the premises which Brinegar knew had been destroyed by fire, Brinegar breached his contract with Shahan and exhibited a "willful and wanton disregard for the consequences" of his actions. Shahan sought both exemplary and punitive damages from Brinegar as a result.

The trial court found substantially in favor of Brinegar and against Shahan, entered his judgment as follows:

"The Court being duly advised now finds:

"1. That Judgment should be entered for the Plaintiff and against the Defendant on Plaintiff's Complaint for Specific Performance; and that Judgment should be entered for Plaintiff and against Defendant on Defendant's Counter-Claim.

2. That the lease entered into between the parties on December 7, 1973 is in full force and effect; and that the original term of said lease commenced on December 18, 1973.

3. That Defendant is in arrears to Plaintiff on rent pursuant to the lease in the amount of $1,300.00, with interest due Plaintiff at the rate of 8% per annum from the date of demand of January 14, 1976, without compounding of said interest.

4. That Plaintiff is entitled to Attorney fees in the amount of $250.00.

5. That Defendant is not in violation of the collateral or security provisions of the Contract entered into by the parties on December 7, 1973.

6. That Court costs should be taxed to Defendant.

Judgment entered on the findings for Plaintiff in the principal sum of $1,300.00 with interest at 8% per annum from January 14, 1976, with Attorney fees in the amount of $250.00 and with Court costs, all to be assessed against Defendant.

/s/ William A. Fawcett"

Shahan thereafter filed his Motion to Correct Errors on December 6, 1977. The motion was overruled by the trial court the same day, and Shahan brings this appeal. He raises the following issues for our review:

(1) Whether the trial court's decision is contrary to law where the lease provides for arbitration of any disputes arising under the terms of the lease and the trial court failed to either dismiss the case or require arbitration.

(2) Whether the decision of the trial court was supported by sufficient evidence in:

 (a) finding Shahan in arrears on rent in the amount of $1,300;

 (b) finding that the term of the original lease began on December 18, 1977; and

 (c) finding that Brinegar made a demand for rent on January 14, 1976.

(3) Whether the decision of the trial court in the amount of $1,300 is contrary to law where the lease provides for a 90-day grace period for the lessee on any rent arrearage.

(4) Whether Shahan was denied a fair trial due to irregularities in the proceedings of the trial court where Nos. 1 and 5 of the findings of fact were inconsistent and appear to be contradictory.

## I.

Whether the trial court's decision is contrary to law where the lease provides for arbitration of any disputes arising under the terms of the lease and the trial court failed to either dismiss the case or require arbitration.

 Shahan asserts that the language of the lease provides for arbitration of any disputes arising under the lease and that this provision makes arbitration a condition precedent to initiation of a suit.[1] Shahan cites 6 C.J.S. *Arbitration* § 7 (1975), at page 172, for the proposition that arbitration is not merely an optional remedy to be pursued or ignored by the parties, as choice may dictate, but "[w]here arbitration has been contracted for, it constitutes a substantive and mandatory right."

We note, however, that 6 C.J.S. *Arbitration* § 28 provides at pages 205–206:

"Arbitration of factual differences may or may not be a condition to recovery in an action on a contract, generally depending on the contract of the parties. In order to prevent resort to the courts the contract must not only provide for an arbitration but *either expressly or by clear implication* make such arbitration a condition precedent to the right of action, and if this is not done the arbitration provision will be construed as merely a collateral and independent matter which cannot be pleaded in bar to an action on the principal contract.

The intention to make the arbitration a condition precedent to the right of action may be either express or implied, *but the implication, if an implied condition is relied on, must be so plain that a contrary intention cannot be supposed.* In other words, the implication is tantamount to a direct expression only because nothing else is inferable." (Footnotes omitted. Emphasis added.)

Ind.Code 34–4–2–2 places the burden of initiating arbitration on *either party* desiring to arbitrate, by requiring a written notice by either party to be mailed by registered or certified mail, or delivered to the other party, in which the party desiring arbitration briefly states a claim, the grounds for the claim and the amount or amounts sought. In the case at bar, neither party initiated arbitration. Shahan insists that Brinegar had the duty to make application for arbitration as it was Brinegar who claimed a dispute over the lease. Shahan also maintains that it was not his burden to request arbitration.

By statute, the trial court is only required to order the parties to proceed with arbitration on the application of a party who has demonstrated (1) the existence of a valid arbitration agreement, and (2) the opposing party's refusal to arbitrate. *See,* Ind.Code 34–4–2–3(a).

There is no showing here that either party formally requested the trial court to intervene and order arbitration pursuant to Ind.Code 34–4–2–3(a), either prior to or during the trial,[2] although Ind.Code 34–4–

---

1. The arbitration clause in the lease reads as follows:

 "In the event a dispute should arise between the parties hereto, each party agrees to submit the dispute to arbitration under the rules of the American Arbitration Association."

2. Appellant Shahan made reference to the existence of the arbitration clause in the lease in his Motion to Dismiss, but did not formally request arbitration until page 14 of the Appellant's Brief.

2–3 provides the trial court with jurisdiction to hear application for arbitration and to order a stay in the proceedings on the underlying agreement.

While a written agreement to submit either an existing controversy or a controversy thereafter arising to arbitration is valid and enforceable under Ind.Code 34–4–2–1, we think the right to require such arbitration, as in the case of other contractual matters, may be waived by the parties where they fail to request arbitration and the issues sought to be determined by arbitration have been fully litigated before a court of competent jurisdiction.

It is the purpose of arbitration to entertain consideration of disputed matters and to reach an acceptable decision and award, without having to undertake often ponderous and costly judicial proceedings. Where, as here, the parties litigant have failed to exercise their option of seeking arbitration until after the trial court has construed the underlying agreement, and made its award thereon, this court on appeal will not set aside the trial court's decision and order arbitration.

## II.

Whether the decision of the trial court is supported by sufficient evidence in:
 (a) finding Shahan in arrears in the amount of $1,300;
 (b) finding that the terms of the lease began on December 18, 1973; and
 (c) finding that Brinegar made a demand for rent on January 14, 1976.

It is well-established that this court will not reweigh conflicting evidence on appeal. We will consider only that evidence which tends to support the trial court's findings of fact, conclusions of law, and judgment together with all the reasonable inferences which may be drawn therefrom and if, from that perspective, there is sufficient evidence to support the trial court's judgment, we must affirm. *Peters v. Davidson, Inc.,* (1977) Ind.App., 359 N.E.2d 556.

In reaching its decision that Shahan was in arrears in the amount of $1,300, the trial court determined that the lease went into effect December 18, 1973, and rent was owed from that date. Shahan argues that the leasehold began on January 9, 1974, the date the Indiana Alcoholic Beverage Commission approved the license transfer, and the first rental payment became due on February 5, 1974, as the lease required.

In interpreting a written contract the court's purpose is to determine the intent of the parties at the time the contract was made as disclosed by the language they employed to define their rights and duties. However, if the terms of the contract are ambiguous, rules of contract construction or extrinsic circumstances may be resorted to in giving effect to the parties' reasonable expectations. The test for determining the existence of such an ambiguity is whether reasonably intelligent persons could come to different conclusions as to its meaning. *Colonial Mortgage Co. of Ind., Inc. v. Windmiller,* (1978) Ind.App., 376 N.E.2d 529.

Further, this court has held that in determining the intention of the parties to a contract, it is the court's obligation and duty to consider their intention in the light of the surrounding circumstances which existed at the time the contract was made. The court should consider the nature of the agreement, together with all the facts and circumstances leading up to the execution of the contract, the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. *Standard Land Corporation of Indiana v. Bogardus,* (1972) 154 Ind.App. 283, 289 N.E.2d 803.

Shahan relies upon the clause in the lease which provides:

"That LESSOR [Brinegars] for and in consideration of the sum of money hereinafter agreed to be paid, and further in consideration of the stipulations, conditions and agreements to be kept and performed by LESSEE [Shahan] as hereinafter set out, does hereby lease to the LESSEE, the following, to-wit:

The building located 710 North College Avenue described as follows: Lot Number Eleven (11) Kenwood Addition to the City of Bloomington, County of Monroe, State of Indiana,

for the period of five (5) years, *beginning at such time as the Alcoholic Beverage Commission approves the license transfer to LESSEE* and ending December 17, 1978 at and for a rental of Five Hundred Dollars ($500.00) per month payable on the fifth day of each month during the life of this lease, *beginning February 5, 1974.*" (Emphasis added.)

A review of the evidence shows that the lease was executed on December 7, 1973, along with a contract for the sale of the tavern equipment and contents of the leased premises. At the same time, an agreement was signed by Brinegar and Shahan, which called for Shahan to serve as "sole and exclusive manager" of the operation as of December 17, 1973, with full power to "manage, operate, control and direct all facets of said business until the day when the transfer of the alcoholic beverage license . . . becomes effective."

As a general rule, in the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction or subject matter are construed together in determining the contract. 6 I.L.E. *Contracts* § 130 (1958), at page 182; *Urbanational Developers, Inc. v. Shamrock Engineering, Inc.,* (1978) Ind. App., 372 N.E.2d 742.

From the three writings, we hold that the trial court could conclude that Shahan took sole possession and control of the premises known as the Still on December 17 or 18 of 1973, and that Shahan operated the business from then until the time of trial. The purpose of the agreement, it appears, was to allow Shahan to commence operations under the sale and lease in mid-December, contingent on the transfer of the liquor license from Brinegar to Shahan.

Shahan testified that he was the "manager" of the business from mid-December, 1973, until January 9, 1974, when the license was transferred; that he was not paid a wage and salary; and that he paid the expenses of the business although he was subject to a $2,000 credit limitation on purchases made in the name of the business under the agreement. Shahan also stated that Brinegar paid any bills for the period prior to Shahan's taking possession, and thereafter Shahan paid the bills out of his proceeds. Shahan testified that he did not pay rent from mid-December, 1973, to January 5, 1974, nor from January 5, 1974, to February 5, 1974, nor during the period after a fire damaged the interior of the building. Under the lease, the rent was $500 per month, with the prorated portion of December, 1973, amounting to approximately $250.

The three writings executed on December 7, 1973, failed to expressly state whether Shahan was liable for rents during December, 1973, and January, 1974. We think that this failure was an ambiguity which the trial court had the duty of resolving. From the evidence, it is clear that the apparent purpose of the writings was to convey the business at the earliest possible time from Brinegar to Shahan, contingent on transfer of the liquor license. Shahan assumed responsibility for the debts of the operation along with control and management in mid-December, 1973, and it is the nature of commercial activity that rental of the premises must be paid for the period one is in possession. Shahan stated on cross-examination that he owed $250 in rent for December, 1973, and $500 in rent for January, 1974. He also admitted not paying $500 in rent in October, 1975, after a fire damaged the interior of the building. We think there is sufficient evidence from which the trial court could find that Shahan owed Brinegar rent arrearage of between $1,250 and $1,300 as a result of the lease commencing on December 18, 1973.

There is no evidence in the record of the proceedings that Brinegar made a demand for overdue rent on January 14, 1976, as the trial court held in its findings of fact Nos. 3 and 6. The evidence clearly shows that Shahan was advised by letter from Brinegar's attorney on October 4, 1976, that he

was behind in his lease payments. The letter also contained inquiries concerning the location of certain business equipment covered by the contract which was to have remained on the premises. Shahan was not advised of the amount Brinegar claimed was owed until the complaint was filed December 9, 1976.

The trial court erred in finding that the date of demand was January 14, 1976, which will necessitate a recomputation of interest on remand.

### III.

Whether the decision of the trial court in the amount of $1,300 is contrary to law where the lease provides for a 90-day grace period for the lessee on any rent arrearage.

█ The lease specifically provides:

"That LESSOR [sic] shall have a ninety (90) day grace period on any overdue rent but shall pay interest in the amount of eight (8) percent per annum on any such accumulated arrearage."

Shahan maintains that under the language stated above, he can be three months or $1,500 in arrears before he is in breach of the lease. Brinegar argues that the 90-day grace period does not refer to the amount of rent owed but to the amount of time the rent is overdue. Brinegar claims that Shahan owed rent for the latter half of December, 1973, for January and February, 1974, and for October, 1975, a total of 104 days.[3] We hold that both parties have made erroneous interpretations of the term "grace period."

Black's Law Dictionary, Revised Fourth Edition (1968) defines the term "grace period" as follows:

"*In Insurance Law. A period beyond the due date* of premium *during which insurance is continued in force and during which payment may be made to keep policy in good standing.* The grace period for payment of premium does not contemplate free insurance or operate to

continue the policy in force after it expires by agreement of the parties. *Miller v. Travelers Ins. Co.,* 143 Pa.Super. 270, 17 A.2d 907, 909." (Emphasis added.)

Webster's New World Dictionary of the American Language, Second College Edition (1968) defines "grace":

"6. a) a period of time granted beyond the date set for the performance of an act or the payment of an obligation; temporary exemption b) favor shown by granting such delay."

From the above, we find that the ordinary interpretation of the 90-day grace period would grant the lessee Shahan 90 days beyond the date set for the payment of rent, during which time he could bring himself current without incurring a penalty, or breaching the lease.

From the evidence, the trial court could reasonably conclude that Shahan had 90 days from the date payment was due within which to bring himself current as to the rent for December, 1973, the rent for January, 1974, and the rent for October, 1975. At the time of trial, Shahan had exceeded the 90-day grace period on each of these three occasions, and the decision of the trial court which held him liable for $1,300 rent was not contrary to law.

### IV.

Whether Shahan was denied a fair trial due to irregularities in the proceedings of the trial court where Nos. 1 and 5 of the findings of fact were inconsistent and appear to be contradictory.

█ Shahan argues that the trial court's findings Nos. 1 and 5 are erroneous in light of Brinegar's complaint for specific performance. In his brief, Brinegar concedes that he amended his complaint at trial to drop all prayers of specific performance concerning reconveyance of the liquor license, etc., and prayed solely for monetary damages under the lease. The trial court's findings of fact and judgment are consist-

---

3. We note that the evidence shows that Shahan paid the rent for February, 1974, somewhat belatedly, with two payments of $750 in two subsequent months.

ent with a specific performance of the lease which would require Shahan, as lessee, (1) to pay all rents due under the lease; (2) to pay attorney's fees for both parties to the action; and (3) to pay interest in the amount of eight percent per annum on the accumulated arrearage. We find no error in the trial court's findings of fact Nos. 1 and 5.

Pursuant to Ind.Rules of Procedure, Appellate Rule 15(N) and Trial Rule 52(B), this cause is remanded with instructions to the trial court to amend its findings of fact and correct its judgment to provide for interest due plaintiff in the amount of eight percent per annum from the correct date of demand of October 4, 1976. The decision of the trial court in all other respects is affirmed.

Affirmed in part; reversed in part; and remanded with instructions.

LOWDERMILK, P. J., and ROBERTSON, J., concur.