**SLUTSKY–PELTZ PLUMBING & HEATING CO., INC. and Traylor Bros., Inc., Defendants–Appellants,**

v.

**VINCENNES COMMUNITY SCHOOL CORPORATION/Vincennes Community School Building Corporation, Plaintiffs–Appellees.**

No. 63A01–9001–CV–36.

Court of Appeals of Indiana, First District.

July 17, 1990.

James F. Butler, III, Jane E. Broadwater, Smith, Currie & Hancock, Atlanta, Ga., Gerald H. McGlone, McGlone & Bough, Terre Haute, Joseph W. Annakin, Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, for defendants-appellants.

L. Edward Cummings, Kimmell, Funk & Cummings, Vincennes, for plaintiffs-appellees.

BAKER, Judge.

### STATEMENT OF THE CASE

Defendant-appellants, Slutsky–Peltz Plumbing & Heating, Co. (Slutsky–Peltz) and Traylor Bros., Inc. (Traylor Bros.), appeal the trial court's order compelling them to submit to arbitration.

We affirm.

## STATEMENT OF THE FACTS

In the 1970's, plaintiff-appellee Vincennes Community School Corporation initiated plans to construct a new high school. Plaintiff-appellee, Vincennes Community School Building Corporation was created for the purpose of financing construction (the School Corporation and the Building Corporation will be referred to collectively in this opinion as "Vincennes"). Vincennes decided that a contract with multiple prime contractors was the most efficient way to solicit bids. Following the bidding process, Traylor Bros. was awarded the contract for general construction, Slutsky–Peltz was awarded the contract for the mechanical work, and Barth Electric Company (Barth) was awarded the contract for the electrical work.

Each of the three prime contractors entered into its own contract with Vincennes. The terms of each contract provided that Vincennes would assign, inter alia, the electrical and mechanical contracts for coordination to the contractor for general construction, Traylor Bros. The prime contracts required each prime contractor to coordinate its work with the work of the other prime contractors. With respect to coordination, Traylor Bros. was required under the contract to provide a project coordinator while Slutsky–Peltz was required to provide a coordinator for the mechanical and electrical aspects of the construction.

After construction commenced, coordination and scheduling were disrupted due to delays in completion of some of the projects. Coordination meetings were held at which complaints were lodged against Slutsky–Peltz for failing to coordinate its work with the other contractors and for its delay in completing its projects. When efforts to rehabilitate the scheduling and coordination problems proved unsuccessful, Barth, the electrical contractor, exercised its right under its prime contract to demand arbitration. On November 5, 1987, Barth made a demand for arbitration against Vincennes (hereinafter referred to as the Barth arbitration). In its application for arbitration, Barth alleged that delays and deviations had occurred on the project and that there was a failure of coordination between the prime contractors. Barth alleged it had been damaged thereby and sought monetary damages and time extensions to complete its work on the project.

In response to Barth's demand for arbitration, Vincennes filed a motion requesting joinder of Slutsky–Peltz and Traylor Bros. as third party defendants in the Barth arbitration. Subsequently, Slutsky–Peltz filed a separate demand for arbitration against Vincennes (the Slutsky–Peltz arbitration). In its application, Slutsky–Peltz alleged damages resulting from delays in the project, failure of coordination, and scheduling problems.

A pre-arbitration hearing was held in the Barth arbitration in which the arbitrators determined that Slutsky–Peltz and Traylor Bros. could not be joined in the Barth arbitration without either their consent or a court order compelling them to do so. The arbitrators gave Vincennes time in which to obtain a court order compelling Slutsky–Peltz and Traylor Bros. to participate in the Barth arbitration. Vincennes promptly filed an application to compel arbitration in which it requested joinder of the two prime contractors in the Barth arbitration. Both Slutsky–Peltz and Traylor Bros. moved to dismiss Vincennes' application for failure to state a claim upon which relief could be granted. Vincennes subsequently amended its application to request a stay of the Slutsky–Peltz arbitration pending decision of the joinder and consolidation issues arising from the Barth arbitration. It further filed a motion for summary judgment alleging there was no genuine issue of material fact with respect to the joinder of Slutsky–Peltz and Traylor Bros. in the Barth arbitration.

The trial court, after hearing oral argument on all motions, entered extensive findings of fact and conclusions of law and determined that Vincennes was entitled to summary judgment. The trial court ordered a stay of the Slutsky–Peltz arbitration and joinder of Slutsky–Peltz and Traylor Bros. in the Barth arbitration. The trial court further denied Slutsky Peltz's and

Traylor Bros.' motions to dismiss. Slutsky–Peltz and Traylor Bros. now appeal, raising one issue for our review which we restate as whether consolidation and joinder of all the prime contractors into one arbitration proceeding was proper under the terms of the prime contracts and under Indiana law.

## DISCUSSION AND DECISION

■ Slutsky–Peltz and Traylor Bros. argue that while this dispute is subject to Indiana's Uniform Arbitration Act, IND. CODE 34–4–2–1 to –22, the trial court erred in ordering them to arbitrate because the Act does not specifically allow for joinder and consolidation of arbitration actions. We agree that the Act does not so provide. The Act, however, does not prohibit such action by the trial court. The statute's intended purpose is to provide a means for resolving disputes other than costly litigation. *Shahan v. Brinegar* (1979), 181 Ind. App. 39, 390 N.E.2d 1036. If this court were to construe the statute to limit to two the number of parties subject to arbitration, the underlying purpose of the statute would be defeated.

■ The statute instructs the trial court to determine whether an agreement to arbitrate exists between the parties. IND. CODE 34–4–2–3. If such an agreement exists, the trial court must order arbitration. In the present case, a contract that provides for arbitration exists. The question, therefore, is whether the arbitration provision in the contract amounts to an agreement by Slutsky–Peltz and Traylor Bros. to submit to arbitration through consolidation and joinder. The answer to this question is a matter of contract interpretation.

■ Generally, construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Hall–Hottel Co. v. Oxford Square Co–Op, Inc.* (1983), Ind.App., 446 N.E.2d 25. Where no defect is claimed to have occurred during formation of the contract, its terms, if unambiguous, are conclusive on the question of the intentions of the parties. *Underwriting Members of Lloyds of London v. United Home Life Ins. Co.* (1990), Ind.App., 549 N.E.2d 67. Slutsky–Peltz and Traylor Bros. cite *International Bhd. of Elec. Workers, Local 1400 v. Citizens Gas & Coke Util.* (1982), Ind.App., 428 N.E.2d 1320, for the proposition that trial courts may not extend arbitration agreements by construction or implication. We agree that trial courts may not extend such agreements. They may, however, determine the issues and the parties subject to arbitration pursuant to the plain meaning of the agreement.

■ There was no allegation before the trial court or before this court that there was a defect in the formation of the contract or that the terms of the contract are ambiguous. Rather, Slutsky–Peltz and Traylor Bros. argue that based on federal cases and cases from other jurisdictions that have interpreted identical provisions [1], joinder and consolidation under the arbitration provisions of the prime contracts is impermissible. We find it is unnecessary to rely on cases from other jurisdictions because the issues raised by this appeal can be decided based on Indiana principles of contract interpretation.[2]

The agreement to arbitrate in the present case provides:

> All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the

---

1. One of the documents adopted and incorporated in the prime contracts is the American Institute of Architects General Conditions of the Contract for Construction. That document contains the standard arbitration provisions provided by the American Institute of Architects which have been interpreted by federal courts and courts of foreign jurisdictions. Indiana has not had occasion prior to the present appeal to interpret the arbitration provisions set forth in the general conditions.

2. Slutsky–Peltz and Traylor Bros. cite foreign cases for the proposition that trial courts lack jurisdiction to compel consolidation of arbitration actions in the absence of contractual language evidencing the parties' agreement to do so. Because we find that the prime contracts evidence such an agreement, the cited cases are inapplicable to the present appeal.

Contract Documents or the breach thereof, ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.... No arbitration shall include by consolidation, joinder or in any other manner, parties other than the Owner, the Contractor and any other persons substantially involved in a common question of fact or law, whose presence is required if complete relief is to be accorded in the arbitration. No person other than the Owner or Contractor shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial.

*Record* at 220 (page 11 of the American Institute of Architects General Conditions). The dispute in the present case centers on whether Slutsky–Peltz and Traylor Bros. are parties which are involved in a common question of fact or law and whose presence is required for complete relief to be accorded in the Barth arbitration. We agree with the trial court's determination that Slutsky–Peltz and Traylor Bros. constitute such parties.

The factual allegations underlying Barth's demand for arbitration arise from delays and problems of coordination and scheduling in the construction project. Similarly, Slutsky–Peltz alleged in its demand for arbitration that it was damaged by delays, scheduling deficiencies and failure of coordination between the prime contractors. The prime contractor for the general work, Traylor Bros., was responsible for the overall coordination of the construc-

tion project. In addition, each prime contractor was responsible for coordination with the other prime contractors. Accordingly, complete relief on the coordination issue could not be accorded without the presence of all of the responsible parties. This includes Slutsky–Peltz and Traylor Bros. There was also evidence before the trial court that complaints had been made against Slutsky–Peltz as a possible cause of delay. Its presence in the Barth arbitration was therefore necessary to resolve the delay issues. Traylor Bros. was responsible as the prime contractor in charge of the general work to maintain proper scheduling. Complete relief on Barth's complaints for damages due to improper scheduling could therefore not be afforded without Traylor Bros.' presence in the arbitration.

The arbitration provisions in the prime contract are unambiguous. Slutsky–Peltz and Traylor Bros. were substantially involved in the legal and factual questions raised in the Barth arbitration and their presence was necessary to accord complete relief in that proceeding. Accordingly, the trial court properly ordered them to participate in the Barth arbitration.

Judgment affirmed.

RATLIFF, C.J., and ROBERTSON, J., concur.