**MID–AMERICA SURGERY CENTER, L.L.C., and David Graybill, M.D., Appellants–Defendants,**

v.

**James G. SCHOOLER and Daria Schooler, Appellees–Plaintiffs.**

**No. 18A05–9904–CV–181.**

Court of Appeals of Indiana.

Nov. 24, 1999.

Jeannette M. Brook, Julian G. Senior, Krieg DeVault Alexander & Capehart, LLP, Indianapolis, Indiana, Attorneys for David Graybill, M.D.

Ralph E. Sipes, Busby Austin Cooper & Farr, Anderson, Indiana, Attorney for Mid–America Surgery Center, L.L.C.

Patrick W. Harrison, Beck Harrison & Dalmbert, Columbus, Indiana, Attorney for Appellee.

## OPINION

STATON, Judge

Mid–America Surgery Center, L.L.C. and David Graybill, M.D. (collectively, "Mid–America") appeal the denial of their Application for Arbitration. Mid–America raises one issue for our review, which we restate as: whether the trial court erred by denying Mid–America's request for arbitration.

We reverse and remand.

Mid–America is a limited liability corporation formed for the purpose of purchasing and developing real estate. James G. and Daria Schooler ("the Schoolers") joined in the formation of Mid–America on February 2, 1997, contributing $40,000 of capital. Mid–America's operation is governed by an Operating Agreement ("Agreement"). On June 5, 1998, the Schoolers informed Mid–America that they were resigning as members.[1] Section 8.1 of the Agreement provides:

> (a) Upon the occurrence of an Event of Dissociation and the vote of a Majority in Capital Interest of the Members, other than the Former Member, to continue the Company, the Company shall purchase the Interest of such Former Member within ninety (90) days following such occurrence, upon the terms and conditions set forth in this Agreement.

The majority of the remaining members voted to continue the operation of Mid–America, but Mid–America did not purchase the Schoolers' interest within 90 days.[2] Thus, on October 30, 1998, the Schoolers filed suit against Mid–America, claiming breach of contract and breach of fiduciary duty. Mid–America sought two extensions of time in which to answer the Schoolers' complaint. On December 16, 1998, Mid–America contacted the Schoolers by certified mail, requesting that all issues arising in the Schoolers' complaint be submitted to arbitration. On December 28, 1998, Mid–America filed an Application for Arbitration and Stay of Proceedings in the trial court. In its application, Mid–America alleged that under the terms of the Agreement, all claims arising from the Agreement were to be resolved through arbitration. The application was denied on March 24, 1999. Mid–America appeals.

■■■ Mid–America contends that the trial court erred by not ordering the parties to submit their dispute to arbitration. Arbitration is a matter of contract and a party cannot be required to submit to arbitration unless he has agreed to do so. *Int'l Creative Management, Inc. v. D & R Entertainment Co., Inc.*, 670 N.E.2d 1305, 1311 (Ind.Ct.App.1996), *trans. denied.* Where a court is asked to compel or stay arbitration, it faces the threshold question of whether the parties have agreed to arbitrate the particular dispute. *Id.* Before a court compels arbitration, it must resolve any claims the parties had concerning the validity of the contract containing the arbitration clause. *PSI Energy, Inc. v. AMAX, Inc.*, 644 N.E.2d 96, 99 (Ind.1994). Once satisfied that the parties contracted to submit their disputes to arbitration, however, the court is required by statute to compel arbitration. *Id.*[3]

■ Mid–America sought to compel arbitration under Section 13.1 of the Agreement. That section provides, in relevant part:

> Any dispute, controversy or claim arising out of or in connection with or relating to this Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to and settled by arbitration in Indianapolis, Indiana pursuant to the rules then in effect of the American Arbitration Association[.]

The Schoolers do not dispute the validity of the Agreement. Instead, they claim that the arbitration clause is unenforceable because Mid–America breached the Agreement. In the alternative, the Schoolers argue that Mid–America has waived its

---

1. Pursuant to the Agreement, the resignation of a member is an event of dissociation.

2. Although it is not relevant to this appeal, Mid–America contends that it could not purchase the interest of the Schoolers without violating the Indiana business flexibility act. IND.CODE §§ 23–18–1–1 to 23–18–13–1.

3. IND.CODE § 34–57–2–3(a) (1998) requires: "On application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration."

right to arbitrate because of its delay in seeking arbitration.

The Schoolers rely on IND.CODE § 34-57-2-1 (1998) in support of their argument that the arbitration clause is unenforceable due to Mid–America's breach of the Agreement. IC 34-57-2-1(a) provides: "A written agreement to submit to arbitration is valid, and enforceable ... except upon such grounds as exist at law or in equity for the revocation of any contract." The Schoolers argue that because Mid–America breached the Agreement by not purchasing their interest within ninety days, the arbitration clause is invalid. We cannot agree. This court has held that:

> [T]he very purpose of arbitration provisions would be defeated and their effectiveness severely limited if a party were held to have abandoned his arbitration rights merely because his actions might be construed to constitute a breach of the contract prior to the time he seeks a clarification of those rights through arbitration.

*Goebel v. Blocks & Marbles Brand Toys,* 568 N.E.2d 552, 557 (Ind.Ct.App.1991) (quoting *U.S. Insulation, Inc. v. Hilro Constr. Co., Inc.,* 146 Ariz. 250, 705 P.2d 490, 495 (Ct.App.1985)). Here, the Schoolers allege that Mid–America breached the Agreement. However, the Agreement specifically provides that any claim arising under the Agreement, including an alleged breach of the Agreement, shall be submitted to arbitration. Thus, the Schoolers' claim is subject to arbitration, unless Mid–America waived that right.

■ Although a written agreement to submit a dispute to arbitration is valid and enforceable, the right to require such arbitration may be waived by the parties. *Shahan v. Brinegar,* 181 Ind.App. 39, 44-45, 390 N.E.2d 1036, 1041 (1979). Such a waiver need not be in express terms, but may be implied by the acts, omissions or conduct of the parties. *McNall v. Farmers Ins. Group,* 181 Ind.App. 501, 506, 392 N.E.2d 520, 523 (1979). Waiver is a question of fact under the circumstances of

each case. *Kendrick Mem'l Hosp., Inc. v. Totten,* 408 N.E.2d 130, 134 (Ind.Ct.App. 1980). The Schoolers argue that Mid–America's delay in seeking arbitration of this matter resulted in a waiver of the right to arbitrate the dispute.

The Schoolers rely on *St. Mary's Medical Ctr. v. Disco Alum. Products,* 969 F.2d 585 (7th Cir.1992), in support of their waiver argument. St. Mary's filed a complaint against Disco in July 1990. Disco did not seek to have the dispute submitted to arbitration until May 1991. In the ten-month interim, Disco had filed a motion to dismiss or for summary judgment, and had participated in the litigation by way of discovery and attending a status conference. The court held that the delay, standing alone, did not result in waiver, because "[a] party needs time to assess its options. Weighing options is not normally inconsistent with the exercise of any of those options, and we can envision situations where a party may properly take months before deciding whether to litigate or demand arbitration." *Id.* at 589. However, the court held that Disco's failure to raise the issue of arbitration during that ten-month delay, coupled with its participation in the litigation, had resulted in the waiver of Disco's right to seek arbitration. *Id.*

■ Here, the Schoolers informed Mid–America that they were resigning as members on June 5, 1998. The Schoolers filed their complaint on October 30, 1998. Forty-seven days later, Mid–America contacted the Schoolers and requested that the matter be submitted to arbitration. The Schoolers did not agree to the arbitration, and Mid–America filed an application for arbitration with the trial court on December 28, 1998. In the interim, Mid–America had not participated in the litigation, except for filing two motions for enlargement of time. No responsive pleadings were filed nor discovery conducted. Thus, we are presented with no acts, omissions or conduct on the part of Mid–America that imply a waiver of the right to arbitrate.

Based on this evidence, we hold that Mid–America did not waive its right to enforce the arbitration clause of the Agreement. The trial court erred by denying Mid–America's application for arbitration.

Reversed and remanded.

NAJAM, J., and RUCKER, J., concur.