**FINLAY PROPERTIES, INC.,**
Appellant–Defendant,

v.

**HOOSIER CONTRACTING, LLC,**
Appellee–Plaintiff.

No. 49A02–0307–CV–644.

Court of Appeals of Indiana.

Dec. 30, 2003.

Publication Ordered Jan. 23, 2004.

Joseph M. Leone, Richard S. Pitts, Matthew J. Schafer, Drewry Simmons Pitts & Vornehm, LLP, Indianapolis, IN, Attorneys for Appellant.

Brett R. Fleitz, Kroger Gardis & Regas, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Finlay Properties, Inc. (Finlay) appeals the trial court's grant of an Emergency Motion to Compel Arbitration brought by Hoosier Contracting, LLC (Hoosier). The sole issue on appeal is: Did the trial court err in finding that Hoosier did not waive its contractual right to arbitration?

We affirm.

The facts most favorable to the ruling demonstrate that in the fall of 2000, Finlay and Hoosier entered into two separate construction contracts relating to the renovation of the Bedford Park apartment complex (Bedford Project). Both contracts contained arbitration clauses providing for arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (AAA) in the event of a claim arising out of or relating to the respective contracts. During the Bedford Project, a dispute arose between Finlay and Hoosier regarding Finlay's obligation to pay for Hoosier's extra work claims. At the completion of the Bedford Project, Hoosier requested a $582,251.99 payment, representing the balance owed on the contracts and extra work Hoosier had performed. Finlay refused to pay the additional monies.

On May 17, 2002, Hoosier filed a complaint in Indiana state court against Finlay, in addition to other consensual and non-consensual lien holders involved in the Bedford Project. As stated by Hoosier in its Emergency Motion to Compel Arbitration:

> The initiation of state court proceedings was necessary under Indiana's mechanic's lien statute, to foreclose Hoosier's lien interest against numerous consensual and non-consensual lien holders, and of arguably greater significance, to pursue the Mountbatten Surety Company,

which provided a bond in favor of Hoosier Contracting on the Bedford Park project. Hoosier is not in contractual privity with Mountbatten and cannot compel its participation in arbitration.

*Appellee's Appendix* at 165. Soon thereafter, on July 15, 2002, Hoosier asserted its contractual right to arbitrate its claims against Finlay for the dispute arising out of the Bedford Project by demanding arbitration and advancing a $6,000 filing fee to the AAA.[1] Finlay did not object to Hoosier's demand for arbitration. Further, in response to Finlay's counterclaims, Hoosier asserted as an affirmative defense that all claims between Hoosier and Finlay were subject to binding arbitration.

Thereafter, the parties attempted to resolve the dispute through mediation under Indiana ADR rules. In preparation for the mediation and in order to facilitate an informed and meaningful mediation, Hoosier took three depositions and served limited discovery on Finlay. Finlay did not object to the discovery requests or the depositions and was present and participated in the depositions. Finlay did not undertake its own discovery but Hoosier produced certain documents to Finlay that it felt supported its claim. Mediation occurred in October 2002, but was unsuccessful.

Finlay's original counsel withdrew its appearance in February 2003.[2] Previous-

---

1. At the hearing on Hoosier's Emergency Motion to Compel Arbitration, Hoosier explained the reason for a two-month delay between the filing of the state court complaint and the demand for arbitration:

   One might inquire, the Court might inquire, why did you wait two months to file that [demand for arbitration]? There's a simple answer. [Hoosier] is owed $600,000 on this case. The filing fee for the AAA is a sliding scale. It's a function of the amount in controversy, and here the filing fee was rather substantial, $6,000. For a small

business that's owed money, it can take a few weeks to come up with that, and that's what happened. So a relatively prompt demand for arbitration after seeking state court relief initially.

*Transcript* at 9–10.

2. We find no merit to Finlay's contention that it was not a party to the proceedings before March 2003. The CCS clearly demonstrates that Finlay appeared by counsel in May 2002. While Finlay's original counsel may have withdrawn and been replaced by current counsel in March 2003, this does not alter the

ly, Finlay's original counsel had never objected to Hoosier's commencement of arbitration proceedings in the AAA pursuant to the construction contracts governing the Bedford Project. Finlay's current counsel filed an appearance in March 2003. For the next two months, Hoosier and Finlay prepared for arbitration, including selection of arbitrators to hear the dispute. On May 7, 2003, however, during a preliminary hearing with the AAA, Finlay's counsel suggested he might object or move to quash the arbitration. Hoosier immediately filed an Emergency Motion to Compel Arbitration on May 13, 2003. Finlay filed a Motion to Quash on May 22, 2003, and the matter was set for a hearing on May 30, 2003.

At the hearing, Finlay asserted that Hoosier had waived its right to compel arbitration of the dispute by instituting state court litigation and pursuing the matter in a judicial forum. Hoosier countered that it had acted consistent with its right to arbitrate the dispute, had only instigated state court litigation to preserve its substantive rights against related entities, and had engaged in limited discovery—without Finlay's objection—for purposes of the October mediation. After the hearing, the trial court found that Hoosier had not waived its right to arbitrate and granted Hoosier's Emergency Motion to Compel Arbitration. Finlay moved to stay the order pending appeal, Hoosier filed its objection, and the trial court sustained the objection.[3]

On appeal, Finlay contends that the trial court's ruling compelling arbitration was error. Specifically, Finlay asserts that Hoosier actively engaged the judicial process and availed itself of the benefits of litigation in such a way that return to arbitration would be inconsistent with principles of waiver and fundamentally unfair.

■■■ As an initial matter, neither party contests the validity of the arbitration agreements at issue. The sole issue presented is if Hoosier waived its ability to compel arbitration through inconsistent actions. We agree with the general proposition that despite a request for arbitration in the initial complaint, a party may waive its right to arbitration by subsequent actions that are inconsistent with that right. *Mid–America Surgery Ctr., L.L.C. v. Schooler,* 719 N.E.2d 1267, 1270 (Ind.Ct. App.1999) ("[a]lthough a written agreement to submit a dispute to arbitration is valid and enforceable, the right to require such arbitration may be waived by the parties ... [and] waiver need not be in express terms, but may be implied by the acts, omissions or conduct of the parties") (citations omitted).

■■■ Waiver is a question of fact under the circumstances of each case. *Kilkenny v. Mitchell Hurst Jacobs & Dick,* 733 N.E.2d 984 (Ind.Ct.App.2000). In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum. *See, e.g., JKL Components Corp. v. Insul–Reps, Inc.,* 596 N.E.2d 945 (Ind.Ct.App.1992) (refusing to

---

fact that Finlay has been a party to this litigation since May 2002, when Hoosier's suit was initiated.

**3.** We note that pursuant to Hoosier's September 17, 2003 Motion for Expedited Ruling, the

AAA set the matter for a four-day arbitration commencing November 3, 2003, and the parties have not indicated that arbitration did not occur at that time. We therefore deny Hoosier's motion as moot.

compel arbitration as appellant made no effort to specifically request arbitration at any time before appeal), *trans. denied; Aetna Cas. & Sur. Co. v. Dalson,* 421 N.E.2d 691 (Ind.Ct.App.1981) (holding plaintiffs had waived their right to arbitrate where they had consistently resisted arbitration and only when an unfavorable judgment was entered against them at trial did they seek to compel arbitration); *Shahan v. Brinegar,* 181 Ind.App. 39, 390 N.E.2d 1036 (1979) (holding that neither party formally requested the trial court to order arbitration either prior to or during trial and trial court had already construed the underlying agreement and made its award); *St. Mary's Med. Ctr. v. Disco Aluminum Prods. Co.,* 969 F.2d 585 (7th Cir.1992) (finding that party participated in litigation by filing a motion to dismiss or for summary judgment in the ten-month period between filing its complaint and seeking arbitration).

Finlay contends that Hoosier's instigation of state court litigation and its discovery pursuit was inconsistent with its right to compel arbitration amounting to waiver of its right. We disagree. Our review of the record demonstrates that Hoosier's actions were consistent with its contractual right to compel arbitration. First, the filing of the state court lawsuit was necessary to protect Hoosier's substantive rights against other entities involved in the dispute, including the surety company that had provided a bond on the Bedford Project. Second, Hoosier demanded arbitration as soon as it obtained the necessary $6,000 filing fee and less than two months after filing its state court complaint. Third, Hoosier never filed any dispositive motions, e.g., a motion for summary judgment, and pursued limited discovery in preparation for mediation.

Moreover, Hoosier consistently maintained and reasserted its position to Finlay. For example, in an August 15, 2002 letter from Hoosier to Finlay whereby Hoosier agreed to delay arbitration for purposes of mediation, Hoosier's counsel wrote: "I have reviewed the matter, conferred with my client, and would be inclined to depart from the AAA path only for a mediation in the very near future, including all parties." *Appellee's Appendix* at 184. The letter also maintained Hoosier's position that it "has a contractual right to binding arbitration." *Id.* Further, a September 4, 2002 letter from Hoosier to Finlay, reiterated this position: "We agreed that notwithstanding a brief stay of the American Arbitration Association proceedings to seek mediation under the Indiana ADR Rules, such an agreement would not constitute a waiver of my client's rights to arbitration under the contract." *Appellee's Appendix* at 187.

Not only do we find Hoosier's actions consistent with its right to arbitration, but also we find Finlay's actions inconsistent with its resistance to arbitration. Between February 2003 and May 2003, Finlay was aware of and participated in preparations for the AAA arbitration. Finlay was included in communications from the AAA to the parties regarding the status of the arbitration, including the scheduling of a preliminary hearing. In March 2003, Finlay made suggestions to Hoosier regarding the ranking of potential arbitrators: "I suggest that we agree for the American Arbitration Association to select one lawyer and two construction industry representatives to make up the panel." *Appellee's Appendix* at 205. Hoosier agreed with Finlay's suggestions and informed the AAA. It was only at the preliminary hearing on the matter in May 2003 that Finlay raised an objection to arbitration, and Hoosier immediately filed its Emergency Motion to Compel Arbitration.

Based on the foregoing, we do not believe Hoosier waived its contractual right to arbitrate its dispute with Finlay. The trial court properly ordered the commencement of arbitration.

Judgment affirmed.

RILEY, J., and SULLIVAN, J., concur.

### ORDER

The Appellee, by counsel, has filed a Motion to Publish Court of Appeals Memorandum Decisions handed down on December 30, 2003. Counsel states that the Court's opinion satisfies the criteria of Appellate Rule 65 (A)(1) and (3) and requests that this Court publish its opinion.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS: 1. The Appellee's Motion to Publish is GRANTED, and this Court's opinion handed down on December 30, 2003, marked Memorandum Decision, Not for Publication is now ORDERED PUBLISHED.

FRIEDLANDER, SULLIVAN, RILEY, JJ., concur.