**JKL COMPONENTS CORPORATION,**
**Appellant–Defendant,**

v.

**INSUL–REPS, INC., Appellee–Plaintiff.**

No. 29A02–9111–CV–495.

Court of Appeals of Indiana,
Second District.

July 27, 1992.

Frederic C. Sipe, Scott D. Pankow, Sipe, Pankow, Han & Rumely, Gregory L. Noland, Emswiller Williams Noland & Clarke, Indianapolis, Bruce A. Boje, Richard Adams, Boje & Pickering, Noblesville, for appellant-defendant.

Deborah L. Farmer, Christine C. Altman, Campbell Kyle Proffitt, Carmel, for appellee-plaintiff.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant JKL Components Corporation (JKL) appeals from a judgment in favor of plaintiff-appellee Insul–Reps, Inc. (Insul–Reps), claiming that the trial court should have enforced the parties' agreement to arbitrate, that the trial court erred when it found an implied contract between the parties, and when it calculated Insul–Reps' damage award.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment reveal that JKL, a California corporation, is a distributor of lamps and lighted products to original equipment manufacturers (such as automobile manufacturers) and Insul–Reps, an Indiana corporation, is a manufacturer's representative that employs a sales staff to sell a variety of products to original equipment manufacturers. Insul–Reps became JKL's representative for Indiana, Kentucky, Tennessee, Mississippi and Alabama.

On January 18, 1982, Insul–Reps executed a representation agreement drafted by JKL. The contract's term was for one year from the date of execution, which would be automatically renewed for four additional periods of one year each, unless either party terminated the agreement. The agreement set forth the commission rate to be paid to Insul–Reps, and provided that JKL could reduce the size of Insul–Reps' territory if it believed Insul–Reps was not effectively servicing the territory.

The contract provided that commissions would be paid for six months after the expiration of the term of the agreement and also allowed JKL to terminate the agreement for cause without having to pay any commissions. The agreement was to be governed by the laws of California and provided: "In the event that any controversy or clain [sic] arising out of the Agreement cannot be settled by the parties hereto, such controversy or claim shall be settled by arbitration at Los Angeles, California, in accordance with the then current rules of the American Arbitration Association in [sic] judgment upon the award may be entered in any court having jurisdiction thereof." *Record* at 15–16.

In December, 1985, Michael Spratt (Spratt), one of Insul–Reps' key salesmen for JKL's products, agreed to accept a reduced commission rate from JKL on a particular lamp sold to a Chrysler production facility in Alabama.

The term of the parties' original agreement ended without either party noticing. The parties continued to operate as if the agreement remained in effect. In July, 1987, JKL considered reducing Insul–Reps' territory, but ultimately no changes were made.

On November 13, 1987, Insul–Reps fired Spratt and shortly thereafter David Stone (Stone), another main salesman of JKL's products, also left the company. Insul–Reps notified JKL of the personnel change. On December 21, 1987, JKL terminated its relationship with Insul–Reps. Within the next three months, JKL hired both Spratt and Stone to sell JKL's products in Insul–Reps' former territory for a lower commission rate than JKL had paid Insul–Reps.

Insul–Reps brought suit, alleging breach of contract, and sought damages for JKL's

failure to pay commissions. JKL filed a motion to dismiss Insul–Reps' claim under Ind.Rules of Procedure, Trial Rule 12(B)(1) (lack of subject-matter jurisdiction), claim-

ing Insul–Reps had failed to arbitrate its claim as required by the contract.[1] After a hearing, JKL's motion was denied.

1. JKL's motion provided:

MOTION TO DISMISS

Comes now the Defendant, JKL Components Corp., by counsel, pursuant to Trial Rule 12(B)(1) of the Indiana Rules of Trial Procedure and files its Motion to Dismiss said complaint. The Defendant states the following grounds in support of its motion to dismiss.

The Plaintiff, Insul–Reps, Inc. failed to exhaust the arbitration procedure provided for in the sales representative agreement between Insul–Reps, Inc. (hereinafter referred to as Insul–Reps) and JKL Components Corp. (hereinafter referred to as JKL). The Agreement between Insul–Reps and JKL states "In the event that any controversy or clain [sic] arising out of the Agreement cannot be settled by the parties hereto, such controversy or claim shall be settled by arbitration". The Defendant cites both Indiana and California law in support of the statement that the Plaintiff has failed to exhaust the arbitration procedure provided for in the agreement.

Arbitration clauses in agreements are valid in Indiana. "[A] written agreement to submit an existing controversy or a controversy thereafter arising to arbitration is valid and enforceable under Indiana Code 34–4–2–1 ..." *Shahan v. Brinegar,* (Ind.App.1979) [181 Ind.App. 39,] 390 N.E.2d 1036, 1041. Indiana Code 34–4–2–1(a) states "A written agreement to submit to arbitration is valid, and enforceable ... This chapter also applies to arbitration agreements between employers and employees ..." Note that Indiana has adopted the Uniform Arbitration Act. See Indiana Code 34–4–2–1 et seq.

In fact, Indiana law favors agreements to arbitrate disputes rather than resorting to judicial proceedings when there is an arbitration clause in the contract. "It is the purpose of arbitration to entertain consideration of disputed matters and to reach an acceptable decision and award, without having to undertake often ponderous and costly judicial procedings [sic]." *Shahan v. Brinegar* [390 N.E.2d] at 1041. See also *Indianapolis Public Transp. Corp. v. Amalgamated Transfer Union Local 1070,* (Ind.App.1981), 404 [414] N.E.2d 966. "The Purpose of the Uniform Arbitration Act, ... is to afford parties an opportunity to reach a final disposition of differences in an easier, more expeditious manner than by litigation ..."

In conclusion, under Indiana Law, it is clear from these cases that the Plaintiff should have attempted to resolve the dispute through the arbitration provision provided on pages 9 and 10 of the sales representative agreement between Insul–Reps and JKL before resorting to the courts, and thus, the

Defendant's Motion to Dismiss should be granted.

It can be agrued [sic] that California law should apply because of the wording of the agreement between Insul–Reps and JKL. The agreement on pages 9 and 10 states, "This agreement shall be construed under and be governed by the laws of the State of California, regardless of the jurisdiction in which any action or proceeding relating to the agreement may be instituted or maintained ... In the event that any controversy or clain [sic] arising out of the agreement cannot be settled by the parties hereto, such controversy or claim shall be settled by arbitration at Los Angeles, California ..." ((See *Terry Fashions, Ltd. v. Ultra Cashmere House Ltd.,* (Ind.App. 1984) 462 N.E.2d 252. Indiana resident's signing of sales order containing arbitration clause and trade association placing arbitration in New York constituted a valid and mutually binding arbitration agreement and conferred jurisdiction on New York Courts.)) The agreement between Insul–Reps and JKL states that the "claim shall be settled by arbitration at Los Angeles, California...." Therefore, California law it appears is the applicable law.

California has a *strong* public policy in favor of arbitration. *San Luis Obispo Bay Properties, Inc. v. Pacific Gas and Electric Company,* (Cal.App.1972), 104 Cal.Rpt. 733, 28 C.A.3d 556; *Spence v. Omnibus Industries,* (Cal.App. 1975) 119 Cal.Rptr. 171, 44 C.A.3d 970; *Ramirez v. Superior Court, Santa Clara County,* (Cal.App.1980), 163 Cal.Rptr. 223, 103 C.A.3d 746. "Arbitration is a method of resolving disputes which is favored over litigation ... [Arbitration] eases court congestion, is less expensive and affords an expeditious disposition of the matter." *Hilleary v. Garvin,* (Cal. App.1987), 238 Cal.Rptr. 247, 249, 193 C.S.[A.]3d 322.

The agreement between JKL and Insul–Reps provides for arbitration. The agreement states, "In the event that any controversy or clain [sic] arising out of the agreement cannot be settled by the parties hereto, such controversy or claim shall be settled by arbitration." California law holds that where the parties by agreement agree to submit all disputes to arbitration one party cannot sue the other party in a court of law until the party has first exhausted the arbitration procedures provided for in the agreement. *Hilleary v. Garvin* [238 Cal.Rptr.] at 249; *See also Lesser Towers, Inc. v. Roscoe Ajax Construction Co.* (Cal.App. 1969), 77 Cal.Rptr. 100, 271 C.A.2d 675; *Forrest v. Hotel Conquistador, Inc.* (Cal.App.1969 [1961]) 14 CalRptr. 349, 193 C.A.2d 503; *Government Emp. Ins. Co. v. Brunner,* (Cal. App.1961), 12 Cal.Rptr. 547, 191 C.A.2d 334.

During the course of the litigation, Insul–Reps filed several motions to compel discovery and for sanctions for JKL's failure to provide documents relating to the commissions Insul–Reps' claimed it was owed. At trial, the trial court ruled that any evidence that JKL had been ordered to produce, but had not, would be excluded.

After a bench trial, the trial court ruled in Insul–Reps' favor, determining that although the contract term had ended, an implied contract existed between the parties containing all of the terms of the former written agreement. The trial court awarded as damages the commissions due for orders shipped to Insul–Reps' territory through August 21, 1988.

The trial court ordered the parties to submit their calculations of the commissions due. The parties submitted their computations of damages, but JKL's calculations were based on evidence not presented at trial, and JKL requested that the evidence be reopened. JKL also moved to amend the trial court's findings and judgment and filed a motion to correct errors. These motions were denied after a hearing and the trial court entered judgment for Insul–Reps in the amount of $225,973.52.

## ISSUES

JKL raises several issues for our consideration, which we consolidate and restate as:

1. Whether the trial court erred when it failed to order the parties to submit to arbitration?

2. Whether the trial court erred when it determined an implied contract existed between the parties?

3. Whether the trial court erred when it determined the damages owed to Insul–Reps?

## DECISION

■ ISSUE ONE—Should the trial court have ordered the parties to arbitrate their dispute?

PARTIES' CONTENTIONS—JKL asserts that because the parties' agreement contained an arbitration clause, the trial court should have ordered them to arbitrate their dispute. Insul–Reps responds that JKL never asked the trial court to order arbitration.

CONCLUSION—The trial court did not err by failing to order the parties to submit to arbitration.

After Insul–Reps filed its complaint, JKL filed a motion to dismiss Insul–Reps' complaint under T.R. 12(B)(1), contending the trial court lacked subject-matter jurisdiction of Insul–Reps' claim because Insul–Reps had not sought arbitration in accordance with the arbitration clause of the parties' contract. On appeal, for the first time, JKL argues that the trial court should have stayed Insul–Reps' action and ordered the parties to arbitrate their controversy.

The trial court properly denied JKL's motion to dismiss, as it did not lack subject-matter jurisdiction over Insul–Reps' claim. "Subject-matter jurisdiction" refers to the power of a court to hear and determine a general class or kind of case and such an

In addition, California has a statute that upholds the validity of arbitration agreements. Cal.Code Proc. Section 1281 states, "A written agreement to submit to arbitration in existing controversy or a controversy thereafter is valid [and] enforceable ..."

Thus, under California law, Insul–Reps should have attempted to resolve the dispute through arbitration before resorting to the courts.

In conclusion, under either California or Indiana law, it is clear that the Plaintiff, Insul Reps failed to exhaust the arbitration procedures provided for in the Sales Representative Agreement and Defendant, JKL's Motion to Dismiss should be granted. The United States Supreme Court also favors arbitration. The U.S. Supreme Court held "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course would lead to prolonged litigation, one of the very risk the parties, by contracting for arbitration sought to eliminate." *Southland Corp. v. Keating* (2984) [ (1984) ], 104 S.Ct. 852 [856], 465 U.S. 1 [7], 79 L.Ed.2d 1, 10.

WHEREFORE, the Defendant, JKL Components Corp. by counsel, prays that the court grant its Motion to Dismiss. *Record* at 23–26.

issue requires the determination of whether a claim falls within the general scope of authority conferred to the court by the Constitution or by statute. *Williams v. Williams* (1990), Ind., 555 N.E.2d 142; *State ex rel. Hight v. Marion Superior Court* (1989), Ind., 547 N.E.2d 267.

The Hamilton Superior Court is a court of general jurisdiction and has concurrent jurisdiction with the Hamilton Circuit Court in all civil actions. Ind.Code 33–5–22–2; IC 33–5–22–5. The trial court therefore had subject-matter jurisdiction over Insul–Reps' breach of contract claim. *See Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334.

JKL cites no authority, and we can find none, to support its claim that a party's failure to arbitrate divests a trial court of jurisdiction over a breach of contract claim. The statutes of both Indiana and California set forth the proper steps to be taken to enforce an agreement to arbitrate if a party resorts to the courts prematurely.

The relevant laws of both Indiana and California are essentially identical. A party seeking to compel arbitration pursuant to an arbitration agreement can petition the court to order arbitration and stay the court proceeding until after the arbitration is completed. Cal.Civ.Proc.Code § 1281.2 and 1281.4; Ind.Code 34–4–2–3.

JKL, however, never attempted to avail itself of the statutory remedy available to enforce the arbitration clause, but instead mistakenly sought to dismiss Insul–Reps' action. JKL now argues that the trial court should have ordered arbitration in spite of the fact that it never requested such relief.

This court considered a substantially similar factual situation in *Shahan v. Brinegar* (1979), 181 Ind.App. 39, 390 N.E.2d 1036. There, "Appellant Shahan made reference to the existence of the arbitration clause in the lease in his Motion to Dismiss, but did not formally request arbitration until page 14 of the Appellant's Brief." *Id.* at 44 n. 2, 390 N.E.2d at 1040 n. 2. We concluded:

> "While a written agreement to submit either an existing controversy or a controversy thereafter arising to arbitration

is valid and enforceable under Ind.Code 34–4–2–1, we think the right to require such arbitration, as in the case of other contractual matters, *may be waived* by the parties where they fail to request arbitration and the issues sought to be determined by arbitration have been fully litigated before a court of competent jurisdiction.

> It is the purpose of arbitration to entertain consideration of disputed matters and to reach an acceptable decision and award, without having to undertake often ponderous and costly judicial proceedings. Where, as here, the parties litigant have failed to exercise their option of seeking arbitration until after the trial court has construed the underlying agreement, and made its award thereon, this court on appeal will not set aside the trial court's decision and order arbitration."

*Shahan, supra* at 44–45, 390 N.E.2d at 1041 (emphasis supplied).

And so it is here. A careful reading of JKL's motion to dismiss clearly establishes that it made no effort to request arbitration at any time before this appeal. The only arguments made in JKL's motion were that 1) the parties had an arbitration agreement; 2) arbitration agreements are enforceable and favored under both Indiana and California law; and 3) because Insul–Reps failed to exhaust the arbitration procedures provided in the parties' agreement, the trial court should dismiss Insul–Reps' action. *Record* at 23–26. JKL did not cite IC 34–4–2–3 in its motion or suggest in any way that the trial court should order arbitration; it merely sought to dismiss the complaint, claiming that *Insul–Reps* should seek arbitration.

IC 34–4–2–3(d) (which was never referred to in any of JKL's arguments to the trial court) provides, in pertinent part: "Any action or proceeding involving an issue subject to arbitration shall be stayed *if an order for arbitration or an application therefor has been made under this section....*" The statute clearly contemplates that the party seeking arbitration bears a burden of affirmative action to be

entitled to a stay of a judicial proceeding. It provides a stay will be issued if an application for arbitration has been made, and no such application was made here.

Our review of JKL's motion to dismiss convinces us that JKL has failed to meet its burden. Nothing in the motion even hints that JKL desired a stay. Its only expressed intention was for the trial court to dismiss Insul–Reps' action. We must conclude, therefore, as we did in *Shahan*, that JKL failed to request arbitration.

Asserting that California law governs our decision on this issue, JKL urges us to follow the decision in *Northcutt Lumber Co. v. Goldeen's Peninsula, Inc.* (1973), 30 Cal.App.3d 440, 106 Cal.Rptr. 353. There, the court reversed the trial court's denial of a request for arbitration that had been raised by demurrer, concluding that "it would hardly be equitable to hold that the matter had never been raised when the defendant objected, albeit by the wrong procedure, *and the trial court proceeded to hear the argument as if it had been properly raised." Id.* at 445, 106 Cal.Rptr. at 356 (emphasis supplied).

Two reasons militate against following *Northcutt*. First, *Northcutt* is factually distinct from the circumstances we consider. The court in *Northcutt* decided "[t]he judge who heard the demurrer apparently treated it as a request for arbitration and it is concluded that no reason appears not to so treat it on appeal." *Id.* The court's ultimate holding was based on the fact that the trial court expressly considered the defendant's motion as a request for arbitration irrespective of the improper procedure used. The trial court here, however, was not presented with any such request to arbitrate. Rather, its subject-matter jurisdiction was challenged and the only relief sought was the dismissal of the complaint. Unlike the defendant in *Northcutt*, JKL never hinted that it desired arbitration. Because the key circumstance present in *Northcutt* is not present here, the rule articulated in *Northcutt* is not applicable.

■ The other reason that *Northcutt* should not be followed is that California law does not control this issue. As a gen-

eral rule, in Indiana, a choice of laws question in a contract action is usually decided by the "most intimate contacts" approach. *Suyemasa, supra.* Courts will also generally give effect to the parties' agreement as to controlling law. *See Joy v. Heidrick & Struggles, Inc.* (1977), 93 Misc.2d 818, 403 N.Y.S.2d 613; 16 Am.Jur.2d *Conflicts of Laws* § 78 (1979).

However, a contract provision that an agreement is to be governed by the law of another state operates only to import the substantive law of that state; the procedural law of the forum state applies to procedural issues. *Gambar Enterprises, Inc. v. Kelly Services Inc.* (1979), 69 A.D.2d 297, 418 N.Y.S.2d 818. Therefore, while the parties have agreed that their contract will be construed under and governed by California law, *record* at 15, Indiana law still governs the procedures to be followed by the trial court.

Laws which fix duties, establish rights and responsibilities among and for persons, natural or otherwise, are substantive in character, while those which merely prescribe the manner in which such rights and responsibilities may be exercised and enforced in a court are procedural. *State ex rel. Blood v. Gibson Circuit Court* (1959), 239 Ind. 394, 157 N.E.2d 475. The question of whether JKL properly asserted its arbitration rights is therefore procedural, and will be governed by Indiana law.

So we elect to follow this court's previous decision in *Shahan*. The trial court did not err by failing to order the parties to submit to arbitration because neither party requested arbitration.

■ ISSUE TWO—Did the trial court properly conclude an implied contract existed between the parties?

PARTIES' CONTENTIONS—JKL claims that the trial court's findings and conclusions are unsupported by sufficient evidence and contrary to law. Insul–Reps replies that JKL has simply asked this court to reweigh the evidence in its favor.

CONCLUSION—The trial court properly determined that an implied contract existed between the parties which included all of

the terms of the parties' prior written agreement.

As the trial court entered findings of fact and conclusions of law at JKL's request, we employ a two-tiered standard of review: we first consider whether the evidence supports the trial court's findings and then whether those findings support the judgment. We will set aside the trial court's findings and conclusions only if the record contains no facts or inferences supporting them. *In re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208; *National Advertising Co. v. Wilson Auto Parts, Inc.* (1991), Ind. App., 569 N.E.2d 997.

Under California law, an implied contract is recognized when a party confers a benefit, not intended as a gratuity, on another party with that party's assent. An implied contract is gathered from the facts showing the parties' mutual intent to contract. *McCaffrey v. Cronin* (1956), 140 Cal. App.2d 528, 295 P.2d 587. The existence of an implied contract is determined by the acts and conduct of the parties in light of all of the surrounding circumstances. *Del E. Webb Corp. v. Structural Materials Co.* (1981), 123 Cal.App.3d 593, 176 Cal.Rptr. 824.

JKL claims that several actions taken by it after the term of the parties' written contract ended establish that it did not intend to extend the written agreement. However, those actions, JKL's contemplated change in Insul–Reps' territory and the reduction the commission paid on the Chrysler lamps, do not support JKL's arguments. The contemplated change in territory, after discussions between the parties, never actually occurred, and was made pursuant to the parties' contract, according to JKL's president. *Record* at 531–34. The reduction in commissions paid on the lamp sold to the Chrysler plant was actually made in 1985. *Record* at 826.

The primary evidence which supports the trial court's findings, however, was the admission by JKL's president that JKL did not realize the term of the parties' contract had ended until after he terminated Insul–Reps' representation. *Record* at 702. JKL's president specifically stated that he was not aware of that fact in July, 1987, when the change in Insul–Reps' territory was considered. *Record* at 702.

As the parties were unaware that the term of the contract had ended and each acted as if the written contract was still in effect, the trial court correctly determined an implied contract existed between the parties. *McCaffrey, supra.* Further, the trial court also properly concluded that all of the provisions of the written contract were contained in the implied contract. *See Hermann v. Littlefield* (1895), 109 Cal. 430, 42 P. 443.

The court in *Martin v. Campanaro* (2nd Cir.1946), 156 F.2d 127, *cert. denied* 329 U.S. 759, 67 S.Ct. 112, 91 L.Ed. 654, adequately stated the law in this regard:

"A contract implied in fact derives from the 'presumed' intention of the parties as indicated by their conduct. When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old. Ordinarily, the existence of such a new contract is determined by the 'objective' test, i.e., whether a reasonable man would think the parties intended to make such a new binding agreement— whether they acted as if they so intended."

*Id.* at 129 (footnote omitted); *see also Autohaus Brugger, Inc. v. Saab Motors, Inc.* (9th Cir.1978), 567 F.2d 901.

This rule of law is particularly appropriate under the facts of this case as there was evidence that the parties believed every provision of the prior contract continued to remain in effect throughout the course of their dealings. JKL's arguments to the contrary amount to nothing more than requests to reweigh the evidence.

ISSUE THREE—Was the trial court's damage award proper?

PARTIES' CONTENTIONS—JKL mounts a six-fold attack on the damage award, asserting that Insul–Reps waived the payment of commissions after the contract was terminated, that the trial court

erred by not making a finding on JKL's claim that the termination was for cause, that the trial court misconstrued the contract language, that the evidence was insufficient to support the damage award, that the trial court should have allowed JKL to offer additional evidence relating to the commissions owed, and that the award should be reduced. Insul–Reps responds that JKL never raised the waiver issue, that a finding on JKL's "for cause" contention was unnecessary, that the trial court properly construed the contract language, that the evidence was sufficient, that JKL was properly precluded from offering additional evidence barred by the trial court as a discovery sanction, and that the award should not be reduced.

CONCLUSION—The trial court's damage award was proper.

■ We begin by clearing away that piece of legal underbrush created by JKL's assertion that Insul–Reps has waived its claim to post-termination commissions. Pursuant to T.R. 8(C), JKL was required to plead waiver as an affirmative defense, yet it failed to do so. *Record* at 43–44, 86. As this issue was not raised in any other responsive pleading or at trial, the issue is waived on appeal. *See Indiana & Mich. Elec. Co. v. Terre Haute Indus., Inc.* (1987), Ind.App., 507 N.E.2d 588, *trans. denied.*

■ At trial JKL argued that it should not be liable for commissions due after the parties' implied contract was terminated because the termination was for cause and the contract provided that no commissions would be owed if the contract was terminated for cause. The trial court determined that JKL owed commissions for the orders shipped through August 21, 1988. The unmistakable inference from the judgment is that the trial court did not agree with JKL's "for cause" contention. JKL now wants us to reverse so the trial court may more explicitly conclude the contract was not terminated for cause.

In considering a similar claim, this court in *Stanzione v. Pascevich* (1982), Ind.App., 431 N.E.2d 847, concluded:

"We agree that where special findings are properly requested the parties are entitled to have the court state the ultimate facts so that a court of review may properly consider the basis for the judgment. Yet it does not mean a reversal is merited whenever a technical deficiency may arguably appear. On the contrary, the law is firmly settled that the findings should be construed together *and* in favor of the judgment. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749. When so reviewed, the findings before us adequately disclose the basis for liability. Since they are also supported by the evidence, they are sufficient."

*Stanzione, supra* at 849 (emphasis in original).

We reach the same conclusion with respect to JKL's claim. The trial court unquestionably rejected JKL's contention that the termination was for cause when it awarded Insul–Reps the unpaid commissions as damages and when it treated JKL's December letter as the 60 day notice of termination required by the contract. Reading the findings in their entirety, the trial court's failure to explicitly find that the termination was not for cause is merely a technical deficiency which does not obscure the trial court's basis for JKL's liability.

It should be added that there is evidence indicating that termination was not for cause. JKL's president stated that the only reason he terminated the contract was that Insul–Reps had allowed Spratt and Stone to leave. *Record* at 549. Yet he admitted that Insul–Reps had a plan for covering Spratt and Stone's territory until replacements could be hired, that the people handing the important accounts were competent, that Insul–Reps' sales of JKL's products had grown every year since the contract was signed and that he had received no complaints from any of his customers from the time Spratt and Stone left until he terminated Insul–Reps' contract. *Record* at 543–54.

This testimony, along with the fact that JKL hired Spratt and Stone several months after terminating Insul–Reps' contract for

a lower commission rate than had been paid to Insul–Reps, *record* at 555–56, supports the trial court's implicit rejection of JKL's claim the termination was for cause.

■ The trial court misconstrued the contract, says JKL, when it determined the amount of the commissions owed to Insul–Reps. The contract provided, in section 8(b): "On orders for REPRESENTED PRODUCTS *shipped within six (6) months of the expiration date of the term hereof,* REPRESENTATIVE [Insul–Reps] shall be entitled to receive a commission as defined hereinabove, on orders received and accepted by JKL prior to the expiration date of the term hereof." *Record* at 12 (emphasis supplied).

The contract also provided, in section 11:

"The term of this Agreement shall be for a period of one year from the date of execution hereof, and, the same shall be automatically renewed for four additional periods of one year each, *unless prior thereto either party had terminated this Agreement under the terms hereof.* Either party may terminate the provisions of this Agreement at any time upon giving the other party written notice in accordance with the following schedule: during the first and second year ... thirty (30) days written notice; during the third year and thereafter ... sixty (60) days notice. Nothing contained herein shall be deemed to prohibit JKL from terminating this Agreement for cause, and nothing contained herein shall require JKL to pay REPRESENTATIVE any commission when termination has been for cause."

*Record* at 13–14 (emphasis supplied).

The trial court awarded damages on the basis of section 8(b) of the contract. JKL maintains that section 8(b) is inapplicable because it *terminated* the contract, while section 8(b) only allows for the payment of commissions after the *expiration* of the term of the contract. JKL asserts that expiration and termination are separate events and that the trial court erred by awarding commissions after the termination of the contract. However, our read-

ing of the contract supports the trial court's construction.

Section 11 of the contract provides for two different endings of the term of the agreement: the first is that the term ends five years from the date of the execution of the agreement and the second is that the term ends if either party terminates the agreement before the end of the five year term. Under section 11, terminating the agreement is clearly an ending of the contract's term.

The use of "expiration" in section 8(b) must refer to both the ending of the term after five years and the ending upon termination or the last sentence of section 11 would be superfluous. If "expiration" did not include "termination" then there would have been no need to state that JKL would not have to pay commissions if termination had been for cause, termination alone would have been sufficient to preclude the payment of commissions.

The evidence at trial demonstrated that Insul–Reps would acquire "requirements contracts" for JKL's products which would entail the ordering of products months in advance of shipping. *Record* at 553, 619–20. The parties' contract provided for the payment of commissions upon shipping because the exact amount of the products shipped pursuant to the requirements contracts were uncertain. *Record* at 620, 628. Section 8(b) allowed for the payment of commissions for six months after the expiration of the contract because the parties recognized that some orders procured by Insul–Reps might not be shipped for several months, and if commissions stopped at the expiration of the contract, Insul–Reps would not receive the commissions it earned because the products would be shipped after the end of the contract.

The trial court's construction of the contract, therefore, comports with both the language of the agreement as well as its underlying rationale. The trial court properly awarded Insul–Reps the commissions owed on products shipped into its territory through August 21, 1988.

■ JKL also laments that the damage evidence is insufficient and that the trial

court failed to allow it to introduce additional evidence to support its calculations of the commissions owed to Insul–Reps. Before the bench trial began, Insul–Reps sought a ruling from the trial court on its motion for sanctions against JKL because JKL had not provided the documents requested during discovery, which included invoices of products shipped to Insul–Reps' territory, despite the trial court's orders. The trial court ruled that any evidence that was specifically ordered, but had not been produced, would be excluded. *Record* at 481.

JKL urges that there is insufficient evidence to sustain the damage award because Insul–Reps did not demonstrate that the products shipped to its territories through August 21, 1988, were "received and accepted" by JKL prior to the termination of the agreement, as required by section 8(b) of the contract. However, the evidence needed to establish which products were shipped pursuant to orders received and accepted prior to the termination of the agreement was solely in JKL's possession, and JKL refused to produce the documents before trial, in spite of the trial court's discovery orders. In essence, JKL refused to produce documents and now claims the evidence was insufficient because those documents were not produced.

Generally, no particular degree of certainty is required in awarding damages so long as the amount awarded is supported by evidence and not based merely on speculation or conjecture. *National Advertising, supra.* And the plaintiff carries the burden of proof as to damages. *Forbes v. Walgreen Co.* (1991), Ind.App., 566 N.E.2d 90. An exception to that general rule, however, was articulated by the court in *Refrigeration & Air Conditioning Institute v. Rine* (1946) 80 Ohio App. 317, 75 N.E.2d 473: "It is generally accepted that he who seeks damages for a breach of contract bears the burden of proof, *unless* a statute otherwise dictates or *knowledge is peculiarly within the possession of the other contracting party who must, in such case, bear the burden of producing it.*" *Id.* at 320, 75 N.E.2d at 474 (emphasis supplied).

The court in *Masano v. Albritton* (1967), 245 Md. 423, 226 A.2d 299 considered a somewhat analogous factual situation. There, the court had before it a suit by a designer against a manufacturer claiming the manufacturer breached an agreement in which the designer was to design lamps and the manufacturer was to pay the designer a royalty on products using his designs. The designer claimed that he had not been paid all that he was owed and introduced evidence showing how much business the manufacturer had done. The court concluded:

> "The figures were taken from the books and records of [the manufacturer] and his succeeding companies and showed initially the amount of the business done, admittedly from products using at least a part of the molds made from [the designer's] models. The burden of coming forward with evidence to show the jury the portions of the gross business which were not subject to the agreement then passed to [the manufacturer]."

*Id.* at 431–32, 226 A.2d at 304.

This principle is particularly appropriate here, as JKL was the only party with access to the information it now claims was lacking. Insul–Reps presented evidence of the total products shipped to the territories it formerly represented. *Record* at 559–617. It presented its calculation of commissions due on the products shipped through August, 1988, based on that evidence. *Record* at 738–40. JKL's president testified that some of the products were shipped on contracts in place prior to the termination of Insul–Reps. *Record* at 619. Insul–Reps also provided evidence, in the form of a letter sent to JKL by Spratt in May, 1987, which demonstrated that significant shipments were expected in 1988 on contracts obtained by Insul–Reps. *Record* at 623–25.

We must conclude that this evidence was sufficient for Insul–Reps to carry its burden of proving its damages and that the burden of demonstrating which products were not shipped pursuant to contracts obtained before Insul–Reps was terminated

shifted to JKL. *See Masano, supra.* JKL could not carry its burden, however, because of the sanction imposed by the trial court for JKL's failure to comply with its discovery orders.

■ The imposition of discovery sanctions is a matter for the trial court's sound discretion. *Nesses v. Specialty Connectors Co., Inc.* (1990), Ind.App., 564 N.E.2d 322. The exclusion of evidence is an appropriate sanction for the failure to comply with discovery orders. *See Brown v. Terre Haute Regional Hosp.* (1989), Ind.App., 537 N.E.2d 54; *Chuck Callahan Ford, Inc. v. Watson* (1983), Ind.App., 443 N.E.2d 79, *trans. denied; Motor Dispatch, Inc. v. Buggie* (1978), 177 Ind.App. 347, 379 N.E.2d 543; Ind.Rules of Procedure, Trial Rule 37(B)(2)(b).

The trial court ordered JKL to fully and completely answer Insul–Reps' interrogatories and produce the documents requested. *Record* at 153. The trial court allowed JKL to delete the customer's name, unit price and unit quantity to protect any proprietary information JKL might not wish to disclose. Insul–Reps' interrogatories and document requests included requests for purchase orders and orders for shipment relating to sales in its territories. *Record* at 92, 95. JKL's compilation of damages relied on evidence not submitted at trial and JKL moved to reopen the evidence. *Record* at 339–69. JKL has not demonstrated that the trial court abused its discretion when it enforced its discovery sanction against JKL and refused to reopen the evidence. *See Brown, supra; Chuck Callahan Ford, supra; Motor Dispatch, supra.*

The discovery sanction may well have its origin in the doctrine that when "the nature of a wrongdoing precludes the ascertainment of the amount of damages with certainty, the wrongdoer cannot complain about the lack of exactitude of which the wrongdoer is the cause so long as the extent of the damages is shown by the evidence as a matter of just and reasonable inference." *Hubler Rentals, Inc. v. Roadway Express, Inc.* (D.Md.1978) 459 F.Supp. 564, 595. *See also Story Parchment Co. v. Paterson Parchment Paper Co.* (1931), 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; *Bangor & Aroostook R.R. Co. v. Brotherhood of Locomotive Firemen and Enginemen* (D.C.Cir.1971), 442 F.2d 812.

Finally, JKL argues that because Insul–Reps normally paid a 50% commission to its sales staff, the damage award should be reduced by 50% because Insul–Reps did not incur that expense. JKL, however, does not point to any evidence in support of its claim that Insul–Reps has saved the commission it would have paid its sales staff. As JKL has not demonstrated any savings on Insul–Reps' part, it cannot claim the damage award should be reduced.

In summary, the trial court's damage award was supported by properly admitted evidence.

Judgment affirmed.

RATLIFF, C.J., concurs.

SULLIVAN, J., concurs in result.