

FILED

Dec 28 2016, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey S. Zipes
Coots Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Andrew M. McNeil
Philip R. Zimmerly
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stardust Ventures, LLC,

*Appellant-Defendant,*

v.

Gary Roberts and Teresa Roberts,

*Appellees-Plaintiffs.*

December 28, 2016

Court of Appeals Case No.
33A01-1603-PL-604

Appeal from the Henry Circuit Court

The Honorable Bob A. Witham, Judge

Trial Court Cause No.
33C03-1404-PL-18

**Robb, Judge.**

# Case Summary and Issue

[1] Gary and Teresa Roberts (the "Robertses") entered into an agreement ("Purchase Agreement") with Stardust Ventures, LLC ("Stardust") to purchase a houseboat. Thereafter, the Robertses cancelled the agreement and brought suit to recover $75,000 paid to Stardust. Stardust filed a motion to dismiss stating it elected to arbitrate the dispute, as agreed upon in the Purchase Agreement. The trial court denied Stardust's motion to dismiss, and subsequently entered summary judgment in favor of the Robertses. Stardust appeals, raising several issues for our review, one of which we find dispositive: whether the trial court erred in denying its motion to dismiss. Concluding the trial court erred in denying Stardust's motion to dismiss, we reverse and remand to the trial court for entry of an order directing the parties to proceed to arbitration.

# Facts and Procedural History

[2] Stardust is a custom houseboat builder located in Monticello, Kentucky. In late 2013, the Robertses and Stardust began negotiating for the construction of a customized houseboat. In November 2013, Stardust and the Robertses reached an oral agreement on the price, time of delivery, floor plan, decorations, and specifications. Specifically, the parties agreed to a price of $775,000 and a delivery of the houseboat in the "midsummer [2014] timeframe." Brief of Appellees at 8. In recognition of their oral agreement, Stardust provided the Robertses with a quote ("Quote"), dated November 3, 2013. The Quote

outlined the general specifications of the houseboat and also stated the price and payment schedule. The Quote also stated Stardust required a non-refundable $10,000 deposit to secure a build slot in its facility and payment of twenty percent of the total purchase price before it would begin construction of the houseboat.[1]

[3] On November 20, 2013, the Robertses paid $75,000 to Stardust. Although they had not paid twenty percent of the purchase price, the Robertses were under the impression their houseboat would be built directly after that of their friend's, who had recently contracted with Stardust, and that their build would commence within six to eight weeks after Stardust received their $75,000 payment. However, Stardust had an internal policy of not beginning a build until it received twenty percent of the total purchase price, and because it did not yet have the full $155,000 from the Robertses, Stardust's management had an internal discussion "on what to do to get [the Robertses' boat] started" in January 2014. Appellant's Appendix at 76. Ultimately, Stardust decided to outsource the build of a different houseboat to create room in its facility for the construction of the Robertses' houseboat, and on January 23, 2014, Stardust contracted with Sunstar Houseboats, Inc., to build the hull of a houseboat it was then constructing in order to create room for the Robertses' houseboat.

---

[1] Twenty percent of $775,000 is $155,000.

[4]     In late January 2014, without having commenced construction of the Robertses' houseboat, Stardust sent an unsigned Purchase Agreement titled "Stardust Cruisers Purchase Agreement" to the Robertses. The Robertses signed the Purchase Agreement and returned it to Stardust on February 4, 2014. The Purchase Agreement also contains the signature of Jerry Harden, the president of Stardust, dated February 12, 2014. The Purchase Agreement signed by the parties includes the agreed upon price, $775,000, and a provision stating the Purchase Agreement incorporates the plans and specifications for the houseboat as provided by the Quote. In addition, the Purchase Agreement includes an arbitration clause. According to the Purchase Agreement, the option of arbitration belonged solely to Stardust, and if Stardust chose to proceed to arbitration, any dispute arising out of the Purchase Agreement would be decided in accordance with the American Arbitration Association, subject to several procedural limitations. The Purchase Agreement also includes an integration clause, which states, "The entire understanding between the parties is set forth in this Agreement. This agreement supersedes and voids all prior proposals, letters and agreements, oral and written, . . ." *Id.* at 31.

[5]     On March 4, 2014, the Robertses informed Harden they desired to cancel their agreement. The Robertses were frustrated Stardust had not yet commenced construction of their houseboat and concerned Stardust would be unable to complete construction by midsummer of 2014, as the parties had agreed. Harden requested the Robertses confirm their cancelation in writing, and on March 5, 2014, the Robertses emailed Harden to confirm their cancellation of

the agreement. The following day, Harden replied to the Robertses' email and stated, "I have advised our bookkeeping department. I will let you know when your check will be ready." *Id.* at 19.

[6] A few weeks later, when Stardust failed to send a check, the Robertses hired counsel to secure the return of their money. On March 24, 2014, Harden sent a letter to the Robertses stating Stardust was "in the process of collecting the costs related to your construction. The cost of that work will be deducted prior [to] considering a refund." *Id.* at 21. Stardust never returned any of the $75,000 and later stated its offer to return any of the $75,000 was a mistake and against policy because deposits are non-refundable.

[7] On April 14, 2014, the Robertses filed a complaint seeking to recover the $75,000 paid to Stardust. The complaint alleged Stardust never returned a signed copy of the Purchase Agreement; therefore, the Robertses alleged they had validly revoked their offer to purchase a houseboat from Stardust, and Stardust was obligated to return the $75,000. On June 11, 2014, Stardust filed a motion to dismiss stating it elected to invoke its right to arbitrate the dispute in accordance with the Purchase Agreement. The trial court denied Stardust's motion to dismiss on August 7, 2014.

[8] On October 19, 2015, the Robertses filed their motion for summary judgment and supporting designated materials. Stardust responded on December 7, 2015, and the trial court held a hearing on the matter on January 15, 2016. The trial court granted the Robertses' motion for summary judgment and entered a

$75,000 judgment in favor of the Robertses. The Robertses filed a motion to correct error on February 24, 2016, alleging the trial court erred in failing to award prejudgment interest. Stardust filed a motion in opposition to the Robertses' motion to correct error and a cross-motion to correct error. The trial court did not hold a hearing nor did it issue a ruling on any of the motions. Stardust now appeals; the Robertses cross-appeal arguing the trial court was obligated to award prejudgment interest as a matter of law.

# Discussion and Decision

[9] Stardust contends the trial court erred in denying its motion to dismiss. Stardust based its motion to dismiss on the existence of an arbitration clause in the Purchase Agreement and stated it elected to proceed to arbitration. Where a motion to dismiss is based upon a contention that arbitration is required before litigation, it is, in essence, a motion to compel arbitration and is treated as such. *See Roddie v. N. Am. Manufactured Homes, Inc.*, 851 N.E.2d 1281, 1284 (Ind. Ct. App. 2006); *Capitol Const. Services, Inc. v. Farah, LLC*, 946 N.E.2d 624, 628 (Ind. Ct. App. 2011). We apply a de novo standard of review to a trial court's ruling on a motion to compel arbitration. *Roddie*, 851 N.E.2d at 1284.

[10] Although the Robertses admit they signed and returned the Purchase Agreement, they dispute its validity and allege they revoked their offer to purchase a houseboat. Thus, as a threshold issue, we address whether the Purchase Agreement is a valid and enforceable agreement between the parties. *See Safety Nat'l Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind. Ct. App.

2005) (stating a party seeking to arbitrate a dispute must first demonstrate the existence of an enforceable agreement to arbitrate), *trans. denied*.

## I. Validity of the Purchase Agreement

[11]  Initially, we note the sale of a goods is governed by Indiana's version of the Uniform Commercial Code ("UCC"). *See* Ind. Code § 26-1-2 *et seq.*[2] "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." Ind. Code § 26-1-2-105(1). A sale of goods also includes contracts for the sale of "future goods" that are "not both existing and identified." Ind. Code § 26-1-2-105(2). Therefore, a contract to build a customized houseboat is the sale of a "good." *See Jones v. Abriani*, 169 Ind. App. 556, 566, 350 N.E.2d 635, 642 (1976) (noting the sale of a mobile home is a sale of a good). We further note "[u]nless displaced by the particular provisions of [the UCC], the principles of law and equity . . . shall supplement the provisions of [the UCC]." Ind. Code § 26-1-1-103.

[12]  Moreover, whether a contract exists is a question of law. *Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005), *trans. denied*. The essential elements of a contract are an offer, an acceptance, and consideration. *Indiana Dep't of State Revenue v. Belterra Resort Indiana, LLC*, 935 N.E.2d 174, 179 (Ind. 2010),

---

[2] The parties cited to the UCC in their briefs before the trial court and to this court on appeal, and do not dispute that the UCC governs this transaction.

*modified on reh'g*, 942 N.E.2d 796 (Ind. 2011). Under the UCC, a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Ind. Code § 26-1-2-204(1). Further, unless otherwise indicated by the contract, "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." Ind. Code § 26-1-2-206(1)(a).

[13] Here, Stardust drafted the Purchase Agreement and sent it to the Robertses.[3] The Robertses manifested their assent to the terms of Purchase Agreement by signing it and returning it to Stardust. Stardust's actions constituted an offer to create a contract, which was subsequently accepted by the Robertses. S*ee Ind. Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 366 (Ind. Ct. App. 2008) (noting the defendant drafted the proposed contract and sent it to plaintiff, indicating the defendant assented to the terms of the proposed contract).

[14] Moreover, Stardust produced a copy of the Purchase Agreement, signed by the president of Stardust, and attached it to its motion to dismiss. The signature of Stardust's president is sufficient to manifest Stardust's intent to be bound by the agreement. Although the Robertses contend the Purchase Agreement was only

---

[3] We note the Purchase Agreement is essentially a modification of the parties' oral agreement. The modification of a contract generally requires the same elements as a contract: offer, acceptance, and consideration. *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 759 (Ind. Ct. App. 2002). However, under the UCC, an "agreement modifying a contract . . . needs no consideration to be binding." Ind. Code § 26-1-2-209(1).

signed and backdated when litigation commenced, they offer no evidence to support this suspicion. Regardless, we note Indiana courts have made clear that "the validity of a contract is not dependent upon the signature of the parties." *Ash, Inc.*, 895 N.E.2d at 366. Signatures of both parties would be required if "such [was] made a condition of the agreement," *Int'l Creative Mgmt., Inc. v. D & R Entm't Co., Inc.*, 670 N.E.2d 1305, 1312 (Ind. Ct. App. 1996), *trans. denied*, but there is nothing in the plain language of the Purchase Agreement to suggest such a condition existed here.

[15]    Even if we assume the Robertses are correct that Stardust did not sign the Purchase Agreement, we still conclude a valid contract existed between the parties. As stated above, a "contract for sale of goods may be made in any manner sufficient to show agreement, *including conduct by both parties which recognizes the existence of such a contract*." Ind. Code § 26-1-2-204(1) (emphasis added). First, the fact Stardust drafted the Purchase Agreement indicates it assented to the terms therein. *See Ash, Inc.*, 895 N.E.2d at 366. Second, Stardust outsourced a current build in order to create space to build the Robertses' houseboat. Specifically, Stardust contracted with Sunstar Houseboats, Inc., pursuant to which it would pay Sunstar $18,000 to build the hull of a current project to create room for the Robertses' houseboat in its facility. Although the subcontracting occurred nearly two weeks before the Robertses signed the Purchase Agreement, it seems unlikely Stardust would make preparations to build the Robertses' houseboat and incur substantial additional expenses to do so, and draft and tender a Purchase Agreement to the

Robertses for their signature, if it did not intend to be bound by the Purchase Agreement.

[16] We conclude the Purchase Agreement is a valid and enforceable agreement between the parties.[4] Both parties manifested their assent to the Purchase Agreement by signing the document. Moreover, even if it was not signed as the Robertses suggest, Stardust manifested its assent to the agreement by its actions.

## II. Waiver of Arbitration

[17] The Robertses also contend Stardust waived its right to arbitrate the dispute. Although Indiana recognizes a strong policy favoring enforcement of arbitration agreements, the right to require arbitration may nonetheless be waived. *MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 905, 910 (Ind. 2004). Whether a party has waived its right to arbitration is a question of fact that depends primarily upon whether that party has acted inconsistently with its right to arbitrate. *Id.* at 910. In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a

---

[4] The Robertses also argue their complaint assumes there is no written agreement between the parties, and since the trial court must take the allegations in their complaint as true, *Kapoor v. Dybwad*, 49 N.E.3d 108, 120 (Ind. Ct. App. 2015), *trans. denied*, it did not err in denying Stardust's motion to dismiss. However, a court should "not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading," *Brenner v. Powers*, 584 N.E.2d 569, 573 (Ind. Ct. App. 1992), *trans. denied*, nor is a court bound to accept as true any legal conclusion asserted in the complaint, *Ankeny v. Governor of Ind.*, 916 N.E.2d 678, 681 (Ind. Ct. App. 2009), *trans. denied*.

litigant is unfairly manipulating the judicial system. *Capitol Const. Servs., Inc.*, 946 N.E.2d at 628.

[18]     In support of their argument Stardust waived its right to arbitrate the dispute, the Robertses cite to *JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945 (Ind. Ct. App. 1992), *trans. denied*. There, Insul-Reps sued JKL for breach of contract alleging JKL failed to pay commissions. JKL subsequently filed a motion to dismiss pursuant to Indiana Rule of Trial Procedure 12(B)(1),[5] claiming Insul-Reps failed to arbitrate the agreement as required by their contract. The trial court denied the motion because it did, in fact, have subject matter jurisdiction over the claim. On appeal, this court faulted JKL for failing to formally request arbitration at any time before appeal, and for mistakenly filing a motion to dismiss for lack of subject matter jurisdiction. We summarized JKL's motion to dismiss, stating, the "only arguments made in JKL's motion were that 1) the parties had an arbitration agreement; 2) arbitration agreements are enforceable and favored under both Indiana and California law; and 3) because Insul-Reps failed to exhaust the arbitration procedures provided in the parties' agreement, the trial court should dismiss Insul-Reps' action." *Id.* at 949. This court further stated that "[n]othing in the motion even hints that JKL desired a stay. Its only expressed intention was for the trial court to dismiss Insul-Reps' action." *Id.* at 950.

---

[5] A party may file a motion pursuant to Indiana Rule of Trial Procedure 12(B)(1) when it alleges a trial court lacks subject matter jurisdiction.

[19] We find *JKL Components Corp.* to be inapplicable to the present case for several reasons. First, we faulted JKL for failing to formally request arbitration at any point before appeal. Here, Stardust has clearly requested the dispute be arbitrated. Stardust's motion to dismiss states, "Pursuant to the applicable contract, [Stardust] has notified [the Robertses] of its election to have this matter decided by arbitration," Appellant's App. at 29, and requested the matter be dismissed so the parties could proceed to arbitration. Unlike in *JKL Components Corp.*, Stardust has done more than simply ask the court to dismiss the complaint for lack of subject matter jurisdiction. Stardust stated it has elected to invoke its right to arbitration, and has properly notified the Robertses of that election.

[20] Second, to the extent the Robertses allege a motion to dismiss is improper and Stardust should have formally requested a stay of litigation, we note that a dismissal is preferred in some situations. *See Koors v. Steffen*, 916 N.E.2d 212, 218 (Ind. Ct. App. 2009) (noting a stay, rather than a dismissal, is perhaps favorable where certain claims remain that are not subject to arbitration, but dismissal is proper where all issues raised must be submitted to arbitration). Here, the Robertses brought a one-count complaint seeking to recover their monies paid to Stardust. In response, Stardust elected to arbitrate the dispute. Therefore, the only issue raised by the Robertses would have to be submitted to arbitration.

[21] Finally, there is no indication Stardust is unfairly manipulating the judicial system. *See Aetna Cas. & Sur. Co. v. Dalson*, 421 N.E.2d 691, 692-93 (Ind. Ct.

App. 1981) (holding plaintiffs had waived their right to arbitrate where they had consistently resisted arbitration and only when an unfavorable judgment was entered against them at trial did they seek to compel arbitration); *Shahan v. Brinegar*, 181 Ind. App. 39, 45, 390 N.E.2d 1036, 1041 (1979) (finding waiver where neither party formally requested the trial court to order arbitration until after the trial court had already construed the underlying agreement and made its award). After the Robertses filed their complaint with the trial court, Stardust filed a motion to dismiss to proceed to arbitration as its first substantive pleading. Clearly, Stardust decided early on in litigation that it would rather have the dispute decided by arbitration and did not wait until an adverse final judgment to request arbitration.

[22] The Robertses also offer a litany of procedural steps they assert Stardust should have taken to preserve the issue for appeal. They assert Stardust should have filed a motion to reconsider or a motion to clarify, it should have filed an immediate appeal of the trial court's denial of its motion to dismiss,[6] or it should have renewed its motion to dismiss at the summary judgment stage. However, the Robertses do not point to any Indiana authority requiring a party to file any of the above-mentioned motions to preserve this issue for appeal.

---

[6] A party may appeal a trial court's order denying a motion to compel arbitration as a matter of right. Ind. Code § 34-57-2-19(a)(1). However, a "claimed error in an interlocutory order is not waived for failure to take an interlocutory appeal but may be raised on appeal from the final judgment." *Bojrab v. Bojrab*, 810 N.E.2d 1008, 1014 (Ind. 2004).

Based on the foregoing, we conclude Stardust did not waive its right to arbitrate the dispute, nor did it fail to preserve the issue for appeal.

# Conclusion

We conclude the Purchase Agreement is a valid and binding contract between the parties, and that Stardust did not waive its right to request arbitration. Accordingly, we reverse the trial court's order denying Stardust's motion to dismiss and remand to the trial court to enter an order compelling arbitration.

Reversed and remanded.

Mathias, J., and Brown, J., concur.